Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| *ROCK SOLID TECHNOLOGY, INC.* **Recurrido** V. *EMPIRE GAS COMPANY, INC.* **Peticionario** | KLCE202400478 | *CERTIORARI* procedente del Tribunal de Primera Instancia San Juan Núm Caso: SJ2020CV01488 Sobre: Cobro de Dinero Ordinario |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

Hernández Sánchez, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 23 de mayo de 2024.

El 30 de abril de 2024, Empire Gas Company, Inc. (Empire o peticionario) compareció ante nos mediante un recurso de *Certiorari* y solicitó la revisión de una Resolución que se emitió el 21 de febrero de 2024 y se notificó el 22 de febrero de 2024 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). Mediante el aludido dictamen, el TPI declaró No Ha Lugar la Solicitud de Sentencia Sumaria que presentó Empire.

Por los fundamentos que expondremos a continuación, ***denegamos*** el recurso de epígrafe.

I.

El 18 de febrero de 2020, Rock Solid Technologies, Inc. (RST o recurrida) presentó una *Demanda* sobre cobro de dinero en contra de Empire.[1] En esta, alegó que Empire los contrató para que les desarrollaran una plataforma de manejo financiero integrada y para estos efectos se realizaron cuatro (4) contratos distintos. Expresó que a los referidos contratos se le asignaron distintos periodos para su cumplimiento y el precio de cada proyecto. Específicamente, en

---

[1] Véase, págs. 1-3 del apéndice del recurso.

cuanto al pago de las facturas adujo que los contratos establecían que el pago se realizaría en 30 días o se le impondría un interés de 1% mensual. Afirmó que los servicios contratados se brindaron y que se presentaron las facturas mensualmente. Sin embargo, sostuvo que, a partir de la factura del mes de noviembre de 2017, Empire dejó de pagar las facturas por los servicios brindados y las facturas se acumularon hasta el mes de diciembre de 2019 cuando Empire decidió que daría por terminado el contrato. Así pues, afirmó que, a pesar de haber realizado gestiones para el cobro de lo adeudado, estas fueron infructuosas por lo que señaló que Empire le debía la cantidad de $399,612.28. Además, reclamó intereses por la cantidad de $66,864.86. Por último, solicitó la imposición de honorarios de abogado por temeridad por la suma de $10,000.00.

En respuesta, el 31 de agosto de 2020, Empire presentó su alegación responsiva con sus respectivas defensas afirmativas.[2] En síntesis, confirmó que acordó con RST para que les proveyera unos servicios conforme a unos acuerdos, pero que este último no cumplió con los objetivos del trabajo lo cual provocó que Empire sufriera grandes pérdidas económicas. Ante ello, argumentó que no le adeuda suma alguna a RST y que sí hubo pagos realizados posterior al año 2017. Cabe precisar, que junto a su alegación responsiva el peticionario también presentó una reconvención, sin embargo, no la discutiremos por no ser pertinente.

Luego de varios trámites procesales, el 26 de abril de 2021, Empire presentó una *Solicitud de Sentencia Sumaria* [...].[3] En primer lugar, enumeró los hechos esenciales los cuales, a su juicio, no estaban en controversia. Luego, argumentó que conforme al derecho aplicable y a los hechos incontrovertidos y la prueba documental que incluyó como parte de su escrito, no había duda de que la deuda

---

[2] Íd., págs. 4-10.
[3] Íd., págs. 11-18.

reclamada no existía y que sí se realizaron pagos antes, durante y después de noviembre del año 2017. Particularmente, alegó que le había pagado a RST una suma mayor a la que reclamaba que ascendía a un total de $426,638.32 por lo que procedía la desestimación de la *Demanda*. A su vez, solicitó la cantidad de $1,791,821.22 por concepto de alegados daños sufridos por incumplimiento de contrato por parte de RST.

En respuesta, el 18 de mayo de 2021, la parte recurrida presentó una *Oposición a Moción de Sentencia Sumaria*.[4] En esta, enumeró los hechos esenciales que, a su juicio, estaban en controversia y los que no. En esencia, puntualizó que de los cheques que se incluyeron como prueba documental de la solicitud de sentencia sumaria, se podía evidenciar que la cantidad adeudada y la pagada correspondían a facturas distintas. Específicamente manifestó que los pagos emitidos por Empire fueron debidamente aplicados a su cuenta, pero que la deuda reclamada era por otras facturas que no se habían pagado y, por ende, estaban vigentes. Por otra parte, sostuvo que nada le adeudaba al peticionario. Así pues, concluyó que no procedía la desestimación de la *Demanda*. Posteriormente, Empire presentó una *Réplica* [...][5] y RST presentó una *Dúplica a Replica* [...][6].

Evaluadas las posturas de ambas partes, el 21 de febrero de 2024, el TPI emitió una *Resolución* que se notificó el 22 de febrero de 2024.[7] En esta, realizó cuatro (4) determinaciones de hechos y luego concluyó que existían hechos esenciales en controversia que impedían que se dictara sentencia sumaria. Los hechos que sostuvo que estaban en controversia son lo siguientes:

1. Si Rock Solid prestó los servicios acordados.

---

[4] Íd., págs. 44-73.
[5] Íd., págs. 74-82.
[6] Íd., págs. 83-87.
[7] Íd., págs. 90-98.

2. Si las facturas por servicios prestados a partir de marzo de 2017 hasta noviembre de 2019 fueron satisfechas por parte de Empire Gas.

3. Si se lograron los objetivos de integración pactados en el contrato.

4. Si Empire Gas le adeuda a Rock Solid la cantidad reclamada en la Demanda.

Conforme a lo antes expuesto, el TPI resolvió que la existencia de hechos materiales en controversia, los elementos subjetivos de intención entre las partes y la credibilidad, es necesario celebrar un juicio en su fondo para dilucidar la controversia por lo que declaró No Ha Lugar la solicitud de sentencia sumaria.

En desacuerdo con esta determinación, el 8 de marzo de 2024, Empire presentó una solicitud de reconsideración[8] que fue denegada mediante una *Resolución*[9] que dictó y notificó el TPI el 1 de abril de 2024. Aún inconforme, el 30 de abril de 2024, el peticionario presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

**Erró el TPI al declarar No Ha Lugar la moción de sentencia sumaria y posterior reconsideración presentada por la parte peticionaria cuando la parte recurrida no controvirtió los puntos levantados con evidencia admisible.**

**Erró el TPI al no atender el reclamo de la parte peticionaria sobre un intento de enmienda a las alegaciones por la parte recurrida.**

Cabe precisar, que junto a su recurso de *Certiorari,* el peticionario presentó una solicitud de auxilio de jurisdicción. Atendido el recurso y la moción en auxilio de jurisdicción presentada, el 30 de abril de 2024, emitimos una *Resolución* concediéndole a la parte recurrida hasta el 10 de mayo de 2024 para expresarse en cuanto al auxilio de jurisdicción y al *certiorari.* Oportunamente, RST presentó su *Oposición a la Expedición del Auto de Certiorari* y negó que el TPI cometiera los errores que Empire le

---

[8] Íd., págs. 99-109.
[9] Íd., pág. 110.

imputo. Además, presentó su oposición a la solicitud de auxilio de jurisdicción. Posteriormente, el 14 de mayo de 2024, emitimos una *Resolución* en la cual declaramos No Ha Lugar la solicitud de auxilio de jurisdicción.

II.

**-A-**

El *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023). Los tribunales apelativos tenemos la facultad para expedir un *certiorari* de manera discrecional. Íd., pág. 847. Esta discreción se define como "el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *García v. Padró*, 165 DPR 324, 334 (2005). Asimismo, discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justa. Íd., pág. 335. Ahora bien, la aludida discreción que tiene este foro apelativo para atender un *certiorari* no es absoluta. Íd. Esto ya que no tenemos autoridad para actuar de una forma u otra, con abstracción total al resto del derecho, pues ello constituiría abuso de discreción. Íd. Así, "el adecuado ejercicio de la discreción judicial esta inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece que el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones cuando se recurre de: (1) una resolución u orden bajo la Regla 56 (Remedios Provisionales) y la Regla 57 (*Injunction*) de las Reglas de Procedimiento Civil; (2) la denegatoria de una moción de carácter dispositivo y; (3) por excepción de: (a) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (b) asuntos

relativos a privilegios probatorios; (c) anotaciones de rebeldía; (d) casos de relaciones de familia; (e) casos que revistan interés público; y (f) cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia.

En otros términos, la Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, establece lo siguiente:

El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Ninguno de estos criterios es determinante por sí solo para el ejercicio de jurisdicción y tampoco constituyen una lista exhaustiva. *García v. Padró,* supra, pág. 335. La norma vigente es que los tribunales apelativos podremos intervenir con las determinaciones discrecionales del Tribunal de Primera Instancia cuando este haya incurrido en arbitrariedad, craso abuso de discreción o en un error en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Pueblo v. Rivera Santiago,* 176 DPR 559, 581 (2009).

**-B-**

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil, 32 LPRA. Ap. V, R. 36, tiene el propósito primordial de proveer una solución justa, rápida y económica en aquellos casos en que surja de forma clara que no existen controversias materiales de hechos que requieren ventilarse en un juicio plenario y el derecho así lo permita. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015).

Particularmente, la Regla 36.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.2, permite que cualquier parte presente una moción, basada o no en declaraciones juradas, para que se dicte sentencia sumaria a su favor sobre la totalidad o alguna parte de la reclamación. *Municipio de Añasco v. ASES et al.*, 188 DPR 307, 326 (2013). Al solicitar dicho remedio, la parte que promueve la sentencia sumaria "deberá establecer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material, o sea, sobre ningún componente de la causa de acción". Íd.

Solicitada la sentencia sumaria basada en declaraciones juradas o en documentos admisibles en evidencia, la parte que se opone a la sentencia sumaria no puede tomar una actitud pasiva y descansar en las aseveraciones o negaciones consignadas en su alegación**.** *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 677 (2018). Por el contrario, dicha parte tiene que refutar los hechos alegados y sustanciar su posición con prueba consistente en contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente. Íd. Es decir, esa persona viene obligada a enfrentar la moción de su adversario de forma tan detallada y especifica como lo ha hecho el promovente en su solicitud puesto que, si incumple con lo antes mencionado corre el riesgo de que se dicte sentencia es su contra. Regla 36.3 de

Procedimiento Civil, *supra*; *SLG Zapata- Rivera v. J.F. Montalvo*, 189 DPR 414, 432 (2013).

Ahora bien, según estableció el Tribunal Supremo en el caso *Verá v. Dr. Bravo*, 161 DPR 308, 334-335 (2004), los foros revisores utilizarán los mismos criterios que el Tribunal de Primera Instancia al determinar si procede una sentencia sumaria. Sobre el particular, en *Meléndez González et al. v. M. Cuebas,* supra*,* pág. 118, el Tribunal Supremo estableció que al revisar una determinación del foro primario en la que se concedió o denegó una moción de sentencia sumaria debemos: (1) examinar de *novo* el expediente; (2) revisar que la moción de sentencia sumaria y su oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra,* y con los discutidos en *SLG Zapata-Rivera v. J. Montalvo, supra;* (3) en el caso de una revisión de una sentencia dictada sumariamente, debemos revisar si en realidad existen hechos materiales en controversia, y de haberlos, exponer concretamente cuáles están en controversia y cuáles no; y (4) de encontrar que los hechos materiales no están en controversia, debemos revisar de *novo* si el TPI aplicó correctamente el derecho. Véase, además, *Rivera Matos, et. al. v. Triple-S et al.,* 204 DPR 1010, 1025 (2020).

Del mismo modo, el Tribunal Supremo ha reiterado que a menos que existan circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto y que la apreciación de la prueba se distancie de la realidad fáctica o esta sea inherentemente imposible o increíble, el tribunal apelativo deberá abstenerse de intervenir con las determinaciones de hechos, la apreciación de la prueba y las adjudicaciones de credibilidad hechas por el juzgador de los hechos. *Flores v. Soc. de Gananciales*, 146 DPR 45, 49 (1998). En otras palabras, las determinaciones que hace el juzgador de los hechos no deben ser descartadas

arbitrariamente ni tampoco deben sustituirse por el criterio del foro apelativo, a menos que de la prueba admitida surja que no existe base suficiente que apoye tal determinación. *Rolón v. Charlie Car Rental Inc.,* 148 DPR 420, 433 (1999).

III.

Nos corresponde justipreciar si debemos ejercer nuestra facultad discrecional al amparo de los criterios enmarcados en la Regla 40 del Tribunal de Apelaciones, *supra.* Luego de examinar el expediente a la luz de los criterios de la Regla 40 del Tribunal de Apelaciones, *supra,* no identificamos razón por la cual este Foro deba intervenir. Ello, ya que no se presentan ninguna de las situaciones que allí se contemplan. Recordemos que nuestro ordenamiento jurídico nos brinda la discreción de intervenir en aquellos dictámenes interlocutorios o postsentencia en los que el foro de primera instancia haya sido arbitrario, cometido un craso abuso de discreción o cuando, de la actuación del foro, surja un error en la interpretación o la aplicación de cualquier norma procesal o de derecho sustantivo. Reiteramos que en el recurso que aquí atendemos no se nos ha demostrado que haya alguno de estos escenarios.

IV.

Por los fundamentos antes expuestos, ***denegamos*** el recurso de epígrafe.


Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


                              Lcda.  Lilia M. Oquendo Solís
                         Secretaria del Tribunal de Apelaciones